UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

Datamaxx Applied Technologies,
Inc., a Florida Corporation,

     Plaintiff,

v.                                 Case No. 4:09-CV-435-RH/WS

Computer Projects of Illinois,
Inc., an Illinois Corporation,

     Defendant.
_____/

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
## AS TO CLAIM FOR COPYING OF LITERAL ELEMENTS OF SOFTWARE

Defendant, Computer Projects of Illinois, Inc. ("CPI"), pursuant to Rule 56, Fed. R. Civ. P., moves for partial summary judgment with respect to plaintiff's claim that CPI copied the literal elements of the software programs at issue.

## Overview

This is a copyright infringement case.  Plaintiff, Datamaxx Applied Technologies, Inc. ("Datamaxx"), alleges that it owns copyrights for two separate software programs - "Omnixx.Desktop" and "Omnixx.Force Browser."  (D.E. 1, para. 9).  Datamaxx alleges that CPI had access to the source codes for these programs.  (D.E. 1, para. 17).  Datamaxx further alleges that CPI copied a substantial portion of its copyrighted materials in order to create derivative works that it is selling as "OpenFox DeskTop" and "OpenFox Messenger Client," respectively.  (D.E. 1, para. 27).  Datamaxx is seeking over $11 million in damages.

**"Literal" Versus "Non-Literal" Copying**

This motion seeks summary judgment only as to Datamaxx's claim that CPI copied the "literal" elements of the programs at issue (i.e., the source code).  CPI is not, at this time, moving for summary judgment with respect to Datamaxx's claim regarding alleged copying of the non-literal elements of the programs.[1]

The "literal" elements of a computer program are its source code or object code.  "Source code" is the means by which a computer program is initially written.  Source code is a symbolic language, often using English words and common mathematical symbols, which humans can read.  Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1539 n. 17 (11th Cir. 1996).  The source code is then translated, through a mechanical process known as compilation or assembly, into "object code," which is a concatenation of 1s and 0s readable by computer.  Id.  The object code is processed by the computer to create screen displays and other "user interfaces."  Id. at 1537 n. 11.

The "non-literal" elements of a software program are the products that are generated by the code's interaction with the computer hardware and operating program(s).  Mitek Holdings, Inc. v. Arce Eng. Co., 89 F.3d 1548, 1555 n. 15 (11th Cir. 1996).  Examples include screen displays and the main menu and submenu command tree structure contained thereon.  Id.  Courts have allowed copyright claims based upon alleged copying of such non-

---

[1] The Federal Rules authorize the Court to enter partial summary judgment as to material facts that are not genuinely at issue. Rule 56(d), Fed. R. Civ. P.

literal elements under the theory that a person may write computer code that, when processed by the computer, produces a screen display that is virtually identical to another screen display, though generated from unquestionably dissimilar code. Bateman, 79 F.3d at 1543 n. 25, citing Digital Communications Assocs. v. Softklone Distrib. Corp., 659 F.Supp. 449, 455 (N.D. Ga. 1987).  "Such an instance would not warrant a finding of literal code copying, but could constitute an infringement of the portion of the screen display that properly qualified for protection."  Bateman, 79 F.3d at 1543 n. 25.

### Datamaxx's Theory of the Case

Datamaxx has been slow to reveal the theory of its case. The Complaint broadly alleges that "CPI copied a substantial portion of DATAMAXX'S copyrighted materials and made a derivative work from DATAMAXX's copyrighted materials."  (D.E. 1, para. 27).  There are no allegations that shed any light on whether Datamaxx contends that CPI copied the literal elements of its program (i.e., the source code), the non-literal elements, or both.

Early in the case, CPI initiated the parties' exchange of copies of the pertinent source code for review by third party experts.  (Exhibits A, B, C attached).  CPI retained Robert Zeidman to conduct a side-by-side analysis of the source codes. Mr. Zeidman is a leading expert in the field and has developed an innovative methodology for analyzing claims of source code copying.  The results of Mr. Zeidman's analysis are discussed

- 3 -

further below.   The upshot is that a side-by-side review reveals no evidence that CPI copied Datamaxx's source code.

CPI served its first set of interrogatories on January 22, 2010.   (Exhibit D attached).   CPI's interrogatories specifically requested that Datamaxx "state with specificity each and every original, non-functional element of the [source code] that you claim is copyrightable and which you claim has been copied by defendant."   (Ex. D, Nos. 1-2)   Datamaxx served its answers to CPI's interrogatories on March 3, 2010.   (Exhibit E attached, Nos. 1-2).   Its answers essentially consist of a 26-page list of every purported similarity between the non-literal aspects of the programs.   (Ex. E, Nos. 1-2).[2]   CPI will not discuss the merits of Datamaxx's non-literal copying claim at this time. The pertinent point for purposes of this motion is that Datamaxx did not identify any alleged similarities between the respective **source codes**.

In light of the foregoing, CPI believed that Datamaxx might well concede that there is no basis for a claim of literal copyright infringement in this case.   CPI served Datamaxx with a Request for Admissions to that effect on April 14, 2010. (Exhibit F attached).[3]   CPI asked Datamaxx to admit that the

---

[2] Datamaxx did not designate its interrogatory answers as "Confidential" pursuant to the Protective Order entered on March 24, 2010.   (D.E. 22, 23).   Nor did it so designate its expert report. (Exhibit K).   Nevertheless, in an abundance of caution, CPI is filing Datamaxx's interrogatory answers (Exhibit E), as well as the parties' respective expert reports (Exhibits K and L) separately under seal.

respective source codes for the programs at issue "are not substantially similar, and thus Datamaxx is thus not claiming in this action that CPI copied literal elements of the [programs]." (Ex. F, Nos. 1, 2).  Datamaxx denied both requests.  (Exhibit G attached).

Contemporaneously with serving the Request for Admissions, CPI served Datamaxx with its second set of interrogatories. (Exhibit H attached).[4]  The interrogatories asked Datamaxx, if its responses to the requests for admissions noted above were anything other than an unqualified admission, to "explain in detail the factual basis for the response and for your contention (if such a contention is made) that verbatim copying of the literal elements of the source or object code of the [applicable] computer program occurred."  (Ex. H, Nos. 1, 2). Datamaxx provided the exact same response to each of these interrogatories:

> Datamaxx filed the complaint at issue based on a review of public record information. Datamaxx cannot affirmatively take a position that substantial copying of the literal elements of the source or object code of the [applicable] computer program occurred or did not occur until such time that Datamaxx has obtained a reviewed a full copy of the source code at work on a computer.

---

[3] The document is mistakenly titled "*Plaintiff's* First Request for Admissions," though it was served by defendant CPI.

[4] This set of interrogatories is also mistakenly titled as "*Plaintiff's*."

(Exhibit I attached, Nos. 1, 2).

As the Court recalls, Datamaxx filed a motion to compel CPI to provide a "working copy" of the software at issue.  (D.E. 24).  Datamaxx argued in the motion that "[w]ithout this access, Plaintiff's expert and Defendant's expert are unable to complete a Rule 26 expert report as required by the scheduling and mediation order."  (D.E. 24, para. 7).  Though acknowledging the distinction between copyright claims based upon literal versus non-literal elements of a software program (D.E. 24, p. 6), Datamaxx nevertheless asserted that "[s]imply providing an expert with thousands and thousands of lines of code printed on a page – with no ability to run the code – does not allow meaningful analysis."  (D.E. 24, p. 8).

Datamaxx's assertion that its expert could not "take a position" on the issue of literal copying until he reviewed a demonstration of the software "at work on a computer" is puzzling at best.  As CPI pointed out in response to the motion to compel, the great majority of a computer program's functionality consists of computations and data transformations and passing messages, all things that are **not** observable to a user running a program.  (D.E. 28, Ex. H, para. 24).  Datamaxx's approach is "like opining on a case of allegedly stolen blueprints for a skyscraper and insisting that the theft could not be determined without having access to bulldozers, cranes, materials, and workers and then actually building a replica of the skyscraper."  (D.E. 28, Ex. H, para. 25).

- 6 -

Nevertheless, in an effort to avoid unnecessary discovery squabbles, CPI did in fact provide Datamaxx with access to "a full copy of the source code at work on a computer." (Exhibit J attached). Several weeks later, Datamaxx provided a "supplemental" expert report which outlines the basis for its copyright claims in this case. (Exhibit K attached).

Notwithstanding Datamaxx's assertions that it could "take a position" on any alleged literal copying of the source code after reviewing the demonstration software, its expert report is silent on the issue. Rather, the entire report is devoted to a (purported) analysis of alleged copying by CPI of non-literal elements of the programs at issue. (Ex. K).

This case has now been pending for more than nine months. CPI provided both the source code itself and access to demonstration software so that Datamaxx's expert could view the programs "at work on a computer." Datamaxx has had more than sufficient time to identify a triable issue of fact with respect to any claim of literal copying. It has wholly failed to do so and partial summary judgment on that claim is therefore appropriate.

## Applicable Law

Courts have developed certain methodologies for analyzing copyright infringement claims, both generally and as relates specifically to cases involving computer software programs. These principles are pertinent to this motion and thus are briefly summarized below.

Generally, all copyright claims, whether or not involving computer software, require the plaintiff to show that:  (1) he or she owns a valid copyright; and (2) the defendant copied protected elements of the work.  Peter Letterese & Associates, Inc. v. World Institute of Scientology Enterprises, Int'l, 533 F.3d 1287, 1300 (11th Cir. 2008).  The second prong of the test entails proof of both "factual" and "legal" copying, i.e., proof that (1) the defendant, as a factual matter, copied portions of the plaintiff's work; and (2) those elements of the copyrighted work that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable.  Id., citing Mitek Holdings, Inc. v. Arce Eng. Co., 89 F.3d 1548, 1554 (11th Cir. 1996).[5]

In copyright cases involving computer programs, courts have developed a test (known as the "abstraction-filtration-comparison test") for separating the protectable and unprotectable elements of the program.  See Computer Associates, Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 701 (2d Cir. 1992). To conduct this test, the court must "filter out as unprotectable the ideas, expression necessarily incident to the idea, expression already in the public domain, expression dictated by external factors (like the computer's mechanical

---

[5] Copyright protects original *expression* only; it does not extend to any underlying ideas, procedures, processes and systems. Peter Letterese, 533 F.3d at 1302.  An oft-repeated example of the distinction is that the idea of hunting a formidable whale at the lead of an eccentric captain is not protected, but the expression of this idea as encapsulated by the novel *Moby-Dick* is protectable.  Id.

specifications, compatibility with other programs, and demands of the industry served by the program), and expression not original to the programmer or author." <u>Atari Games Corp. v Nintendo of America, Inc.</u>, 975 F.2d 832, 839 (Fed. Cir. 1992).

Application of the abstraction-filtration-comparison test often leaves little, if any, protectable elements with respect to the non-literal aspects of a computer software program. <u>See Tradescape.com v. Shivaram</u>, 77 F.Supp.2d 408, 415 (S.D.N.Y. 1999) ("many elements of a computer program serve a utilitarian function and are not wholly expressive, so much of the program may be unprotectible"); <u>see also</u> <u>Mitek</u>, 89 F.3d at 1557 n. 20 (main menu and submenu command tree structure of plaintiff's CAD program for designing roof trusses not entitled to copyright protection where the look of the user interface was "basically industry standard," i.e., menu bars running across the top and the right, with a large work area occupying most of the screen).

Though commonly discussed in the context of claims involving the "non-literal" elements of computer software, the substance of the abstraction-filtration-comparison is in reality applicable to claims involving literal copying of source code as well (and indeed to any copyright claim) as part of the process of determining whether any copying that occurred is legally actionable. <u>See</u> <u>Business Management Int'l, Inc. v. Labryinth Business Solutions, LLC</u>, Case No. 05 Civ. 6738 (MHD), 2009 WL 790048, at n. 8 (S.D.N.Y. March 24, 2009) ("We note that in analyzing the substantial similarity of the literal code, we essentially apply the steps of filtration and comparison in

separating protectable code form non-protectable code, and then comparing the protectable code to the allegedly copied material.").

### Summary Judgment as to Claim for Literal Copying

As previously noted, CPI now seeks summary judgment as to any claim by Datamaxx involving alleged copying of the literal elements of the programs at issue.  Mr. Zeidman's expert report, based upon a side-by-side comparison of the source code, concludes that no evidence of copying exists.  Further, Datamaxx has not identified any evidence of literal copying and thus cannot carry its required burden of proof.  Summary judgment is therefore in order.

The seminal case addressing this aspect of Rule 56 is Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  In that case, the Supreme Court held that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322, 106 S.Ct. at 2552.  The Court rejected the proposition that the defending party is obligated to affirmatively negate the plaintiff's claim.  Id. at 323, 106 S.Ct. at 2553.  Rather, a defendant can obtain summary judgment by "identifying those portions of [the record] which it believes demonstrate the *absence* of a genuine issue of material fact."  Id.  The Court explained that:

> [b]efore the shift to "notice pleading"
> accomplished by the Federal Rules, motions
> to dismiss a complaint or to strike a
> defense were the principal tools by which
> factually insufficient claims or defenses
> could be isolated and prevented from going
> to trial with the attendant unwarranted
> consumption of public and private resources.
> But with the advent of "notice pleading,"
> the motion to dismiss seldom fulfills this
> function any more, and its place has been
> taken by the motion for summary judgment.

Id.  Accord Roe v. Aware Woman Center for Choice, Inc., 357 F.3d 1226 (11th Cir. 2004) (affirming summary judgment for defendant where record was devoid of evidence that the defendants had the statutorily-required motive).

This is a "textbook" case for application of the doctrine announced in Celotex.  As previously noted, Datamaxx's complaint does not indicate whether its copyright claim is based upon alleged copying of the literal elements of its programs, the non-literal elements, or both.  CPI was thus required to ascertain and "isolate" the basis for Datamaxx's claims through discovery.  It has now done so.  After months of discovery, Datamaxx has isolated its claim to one for alleged copying of the non-literal elements of the programs at issue. (Ex. K).  It has failed to identify any evidence of alleged copying of its source code.  Partial summary judgment with respect to that claim is therefore appropriate.

The court entered partial summary judgment as to literal copying under similar facts in General Universal Systems, Inc. v. Hal, Inc., 379 F.3d 131 (5th Cir. 2004).  That case involved

alleged infringement of a copyrighted software program for freight packaging.  Id. at 137.  The plaintiff alleged that the defendant copied both literal and non-literal elements of the software.  Id. at 138.  Both parties filed summary judgment motions on the copyright claims.  Id. at 138-39.  The district court granted the defendant's summary judgment motion with respect to the claim of non-literal copyright infringement.  Id. at 139.  The district court also denied the plaintiff's summary judgment motion with respect to literal copyright infringement and, *sua sponte*, entered summary judgment in favor of the defendant on that issue as well.  Id.  The plaintiff appealed.

The Fifth Circuit affirmed.  In doing so, the court explained that not all factual copying constitutes copyright infringement.  Id. at 142.  Rather, the plaintiff in a copyright case must demonstrate that any alleged copying is legally actionable by showing that the allegedly infringing work is substantially similar to protectable elements of the infringed work.  Id.  In order to conduct this analysis, "[a] side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'"  Id., quoting Creations Unlimited v. McCain, 112 F.3d 814, 816 (5th Cir. 1997).[6]

---

[6] The court noted that non-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.  General, 379 F.3d at 142 n. 18.

The court held that the plaintiff failed to demonstrate a triable issue with respect to its claim of literal copying.  Id. at 145-46.  Specifically, the court noted that the plaintiff's evidence did not include any analysis of the respective source codes.  Id.  Rather, the plaintiff relied on various examples of the system in operation, such as a database layout, a directory list of data entry fields, and invoices generated by the two systems.  Id. at 139.  The court held that this evidence failed "on the most basic level" because:

> [t]o prevail on a claim of source code copyright infringement, [the plaintiff] would have to prove that [the defendant's] source code is substantially similar to [the plaintiff's] source code.  To do so, "a side-by-side comparison must be made between the original and the copy."  [The plaintiff], however, failed to attach any of its own source code to its summary judgment motion or to compare [the defendant's] source code to [the plaintiff's] source code, despite its conclusory assertions that the four exhibits were evidence of direct copying.

Id. at 146.  The court concluded that, "[w]ithout providing its own source code comparison, [the plaintiff] did not satisfy the requirement that the infringed and infringing work be compared side-by-side."  Id.

General is on point and summary judgment should be entered in favor of CPI with respect to any claim by Datamaxx of literal source code infringement.  First, as previously noted, Mr. Zeidman **has** performed a side-by-side analysis of the respective source codes and concluded that there is no evidence of copying.

Second, Datamaxx has failed to perform a comparable side-by-side analysis of the source codes, or to otherwise engage in the required analysis of alleged factual and legal copying that it has the burden to prove.

### A.   Mr. Zeidman's Report

Mr. Zeidman is a Stanford and Cornell educated electrical engineer and software designer and perhaps the country's foremost authority on the "abstraction-filtration-comparison test." A copy of Mr. Zeidman's report is attached as Exhibit L.

Mr. Zeidman employed a methodology known as "source code correlation," which he originated. (Ex. L, para. 12). The methodology involves software that analyzes each party's source code files using specific algorithms in order to find similarities that might otherwise be difficult to detect by manual comparison. (Ex. L, para. 13). The results of the software analysis are then analyzed to determine whether the source code correlations are due to non-actionable reasons (such as code already in the public domain, code dictated by external factors such as the demands of the industry served by the program, and code not original to the programmer or author). (Ex. L, para. 13). The methodology essentially performs the process known in legal terms as the "abstraction-filtration-comparison test. (Ex. L, para. 13).

Based upon this test, Mr. Zeidman concludes that there is no evidence that CPI copied Datamaxx's source code. (Ex. L, para. 24). Mr. Zeidman explains that any correlations found by the computer analysis were based either on third party source

code or common identifier names.  (Ex. L, paras. 25-47).  After eliminating these legitimate correlations, there were no correlations remaining, and thus no evidence of copying.  (Ex. L, para. 48).

### B.    Datamaxx's Evidence

In contrast to Mr. Zeidman's thorough and comprehensive analysis, Datamaxx's expert report is *silent* on the issue of any alleged literal copying.  (Ex. K).  This despite the fact that CPI produced its source code four months ago, on April 1, 2010. Datamaxx has declined to engage in a side-by-side analysis of the respective source codes for the programs at issue.  It has not identified any evidence of any similarity between the respective source codes, let alone provided any filtration analysis regarding the protectable and non-protectable elements of its source code.  Instead, in both its interrogatories and its expert report, it has focused solely on alleged similarities with respect to the non-literal elements of the programs.  (Exs. E, I, K).    As in General, Datamaxx's disclosures fail to establish a triable issue as to literal infringement "on the most basic level."  Partial summary judgment on this issue should therefore be entered.

### Conclusion

Defendant, Computer Projects of Illinois, Inc., respectfully requests that the Court grant its motion and enter partial summary judgment in its favor with respect to any claim by plaintiff for copyright infringement based upon the literal

elements of the computer programs at issue, and enter any further relief the Court deems just and appropriate.

<div style="margin-left:50%">

Respectfully submitted,

AUSLEY & McMULLEN, P.A.

/s/Martin B. Sipple_____
Robert N. Clarke, Jr.
Fla. Bar No. 0592900
Martin B. Sipple
Fla. Bar No. 0135399
123 South Calhoun Street
Tallahassee, Florida 32301
(850) 224-9115 – telephone
(850) 222-7560 – facsimile

Attorneys for Defendant

</div>

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was served via the Court's ECF system the <u>29th</u> day of July, 2010 to:

Wiley Horton
Adrienne Love
Pennington, Moore, Wilkinson, Bell & Dunbar, P.A.
215 South Monroe Street, Suite 200
Tallahassee, Florida 32301

<div style="margin-left:50%">

/s/Martin B. Sipple_____
Attorney

</div>